JUDGE McMAHON

10 CV 1464

Peter A. Bicks
Lisa T. Simpson
Aaron G.R. Rubin
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



----

THE NEW YORK CITY TRIATHLON, LLC,

   Plaintiff,

  -against-

NYC TRIATHLON CLUB, INC.,

   Defendant.

----

Civ. No.

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff THE NEW YORK CITY TRIATHLON, LLC ("New York City Triathlon" or "Plaintiff"), by its attorneys, Orrick, Herrington & Sutcliffe LLP, alleges as and for its Verified Complaint against Defendant NYC Triathlon Club, Inc. ("NYC Triathlon Club" or "Defendant") as follows:

### NATURE OF THE CASE

1.  This is an action by Plaintiff New York City Triathlon to prevent and restrain Defendant's unauthorized and infringing misappropriation of its well-known and distinctive trade name and trademarks.  The New York City Triathlon race ("NYC Triathlon") has been run annually each summer since 2001 on New York City's Upper West Side, ending in Central Park.  It has become increasingly prominent since its inception, with approximately 250,000 spectators and over 20,000 people seeking entry to the sold-out race this year. The race is currently broadcast around the world to great acclaim and receives extensive media coverage.

Through ten years of continuous and exclusive use of the New York City Triathlon trade name and trademarks, and hard work to ensure the high quality and safety of the event, Plaintiff has established substantial goodwill nationally and around the world in its name and marks.

No longer content to serve as a sponsor of the NYC Triathlon and properly pay for its affiliation with Plaintiff, Defendant, recently known as the "SBR Triathlon Club," has just announced the change of its name to "The NYC Triathlon Club," blatantly incorporating Plaintiff's trade name and mark into its own.  To avoid inevitable confusion and deception of consumers and to prevent Defendant's obvious and willful intent to trade on Plaintiff's goodwill, Plaintiff has asserted claims for trademark infringement, unfair competition and false designation of origin pursuant to Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), for dilution under Section 43(c)(1) of the Lanham Act (15 U.S.C. § 1125(c)(1)), for cybersquatting under Section 43(d) of the Lanham Act (15 U.S.C. § 1125 (d)), and for the related claims of infringement, dilution, deceptive business practices, and unfair competition under the statutory and common law of New York.  Plaintiff seeks injunctive relief to prevent Defendant from using Plaintiff's New York City Triathlon name and marks in any way and to prevent Defendant from profiting from Plaintiff's goodwill and further seeks compensatory and punitive damages and attorneys' fees resulting from Defendant's infringing acts.

<u>THE PARTIES</u>

2.     Plaintiff The New York City Triathlon, LLC is a limited liability company duly organized under the laws of the state of New York, with its principal place of business located at 250 W. 57th Street #1713, New York, NY 10107.  As described below, Plaintiff operates the New York City Triathlon (the "NYC Triathlon"), an Olympic distance race that has achieved great success, becoming one of the best known and respected races of its kind among

not only the national and international triathlon community, but the public at large. The race also has become a signature New York City event, attaining a rarefied place on the City's calendar along with events such as the ING New York City Marathon and the Macy's Thanksgiving Day Parade. As a result, the NYC Triathlon has received substantial and unsolicited media coverage, both nationally and internationally. It is further publicized by Plaintiff through traditional advertising and through a website located at www.nyctri.com.

     3.     On information and belief, Defendant NYC Triathlon Club is a for-profit corporation organized under the laws of the state of New York with its principal place of business located at 203 W. 58th Street, New York, NY 10019. Defendant purports to operate a club for people interested in training for and participating in triathlons and other endurance races. NYC Triathlon Club operates a website that can be accessed through the web address, www.nyctriclub.com. Defendant promotes itself, sells memberships and sells its merchandise, bearing the name "NYC Tri Club," at this website. On information and belief, the principal officer, director, and shareholder of NYC Triathlon Club is Christophe Vandaele.

<u>JURISDICTION AND VENUE</u>

     4.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 1338(b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

     5.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the events giving rise to the claim occurred in this district and in that Defendant may be found in this district.

     6.     This court has personal jurisdiction over Defendant in this action by virtue of its acts and omissions which have taken place in the state of New York and are designed to,

and are, causing substantial confusion and deception among consumers in New York and irreparable injury to the NYC Triathlon's valuable reputation, goodwill, trademark, name, domain name, and other intellectual property assets in New York. Defendant's principal place of business is located in New York, and, upon information and belief, the vast majority of its training sessions, social events, and other gatherings take place in New York.

## THE NEW YORK CITY TRIATHLON

7.     The NYC Triathlon is an Olympic distance race in which participants swim, bike, and run through New York City's defining landmarks, including the Hudson River, the West Side Highway, and Central Park. Each year, tens of thousands of hopefuls vie for the race's 5,600 spots, which are filled within minutes of going on sale. The NYC Triathlon is one of the three largest Olympic distance triathlons in the world. The size and importance of the event has made it a "must-cover" story for countless media outlets and a magnet for sponsors. This year, 2010, the race is celebrating its tenth anniversary.

8.     The race is composed of three competitions – a 1500 meter swim in the Hudson River, a 40 kilometer bike ride along the West Side Highway to Van Cortlandt Park, and a 10 kilometer run beginning in Riverside Park and ending in Central Park. In order to hold the race in some of New York City's busiest and most distinctive landmarks, Plaintiff obtains each year the express consent of over forty different city and government agencies, including the New York City Parks & Recreation Department, the New York City Police Department, the New York City Fire Department, the Metropolitan Transportation Authority, the Department of Transportation and the Bridge and Tunnel Authority. It is the only race of its kind to receive such approval and support from New York City.

9.     The NYC Triathlon is sanctioned by USA Triathlon ("USAT"), the independent, not for profit corporation that governs triathlon racing in the United States. The USAT's sanction assures that the race follows certain safety and certification guidelines and also allows the race's participants to compete for ranking points that lead to qualifications for the Olympics (for professionals) and World Championships (for amateurs).

10.     The first NYC Triathlon was staged in 2001 in connection with New York City's bid for the 2012 Summer Olympics. In 2000, NYC2012, the non-profit organization charged with leading that effort, engaged John Korff ("Korff") and his company Korff Enterprises, Inc., an experienced sports promotion company that has operated over two hundred sporting events, to organize and stage the first NYC Triathlon. That year, the NYC Triathlon also served as the setting for the USA Triathlon Elite National Championships. In connection with that first race, Korff and his company also began using what has since become their well-known trade name and trademarks, NEW YORK CITY TRIATHLON, NYC TRIATHLON and NYC TRI (the "NYC TRIATHLON Marks").

11.     That first year, the NYC Triathlon had just under 700 amateur participants and 40 Olympic hopefuls. The event received a substantial amount of unsolicited media coverage, including a front page story in The New York Times, which, upon information and belief, was the first time the newspaper had placed a story about a triathlon on its front page.

12.     In 2003, NYC2012 ceded its role in the NYC Triathlon to Korff's newly established limited liability company, Plaintiff The New York City Triathlon, LLC. The company was set-up specifically to handle the NYC Triathlon's increasingly visible status in the triathlon world and beyond. Although the race was still affiliated with NYC2012 until New York City lost the Olympic bid in 2005, it was no longer subject to the strict International

Olympic Committee guidelines, and Plaintiff was free to seek corporate sponsorship and publicity for the NYC Triathlon.

13.     The 2003 NYC Triathlon received substantial corporate support and sponsorship. That year, 1500 participants entered the NYC Triathlon, which now awarded its champions a collective $80,000 in prize money. The Ford Motor Company, which had joined the race in 2001, continued as its principal sponsor, and Plaintiff also secured sponsorships with Gatorade, GQ Magazine, Gristedes Supermarkets, Marriott Hotels, and other highly visible corporations.

14.     The 2003 NYC Triathlon also received extensive and wide ranging broadcast media coverage from outlets such as New York affiliate CBS 2, the national Outdoor Life Network, and BBC Worldwide, which provided international coverage of the race. In all, the broadcasts were viewable by over 60 million people in the United States and over a billion people worldwide.

15.     Just as significantly, Plaintiff publicized the 2003 NYC Triathlon via a significant advertising campaign, prominently using and featuring all the NYC TRIATHLON Marks, and purchasing space in publications such as  The New York Post, Metro Sports-NY, and Triathlete Magazine. Plaintiff also advertised on CBS 2 and on the popular New York radio stations, Z-100 and WFAN. Finally, Plaintiff publicized the event on its own website, www.nyctri.com, as internet advertising has become the principal source of information about triathlons and similar athletic events.

16.     In the following years, 2004 to the present, the NYC Triathlon has continued to grow in popularity and respect. The race continues to be broadcast worldwide and media coverage of the event has increased to unprecedented levels. News stories about and

coverage of the NYC Triathlon have appeared on television stations and programs such as CNN, WFAN, the BBC, the FOX Network, the Today Show, Good Morning America, CBS's Early Show, and ABC's and CBS's national news programs. Moreover, print publications such as The New York Times, The Wall Street Journal, The Washington Post, USA Today, and the Associated Press, and countless other outlets throughout the nation and the world regularly run stories on the NYC Triathlon. Korff himself is mentioned in many of these features, including multiple articles in The New York Times, in which he is touted for the superb way that he and his company run the NYC Triathlon. Likewise, the race continues to acquire additional sponsors, such as Dasani Water, Delta Airlines, Visa, Accenture, Janus Capital Group, JetBlue, Toyota, and News Corp., the owner of The Wall Street Journal and the Fox Broadcasting Company. In 2006, the NYC Triathlon acquired a new primary sponsor, Nautica. Nautica remains the event's principal sponsor for 2010 and 2011.

17.      In addition to continuing media coverage, the event receives publicity from its corporate sponsors, such as advertisements on the Fox Network's television stations and in The Wall Street Journal. Additionally, Plaintiff continues to publicize the NYC Triathlon on television stations such as New York's NBC and FOX affiliates, with advertisements in every major triathlon magazine, in publications such as The New York Post, and on its own website, www.nyctri.com. Attached hereto as Exhibit A, is a true and correct copy of Plaintiff's 2009 Wrap-Up Book, which documents Plaintiff's media coverage and publicity efforts for its most recent race.

18.      To further publicize the race, Plaintiff's staff engages in a meticulous and time-consuming process, devoting hundreds of man-hours to communicating with individual triathletes and with presidents of the approximately four hundred USAT triathlon clubs. To do

so, the staff must work to identify the continually-changing and unlisted roster of USAT club presidents so that these presidents can be solicited to promote the NYC Triathlon within their clubs. This outreach campaign runs all year but during the 3-month period of heavy promotion in the Fall, Plaintiff staffs three full-time employees to engage in this effort. Upon information and belief, no other triathlon engages in this grassroots effort in support of its goodwill in the community.

19.    Upon information and belief, the NYC Triathlon is the most aggressively promoted Olympic distance triathlon in the United States.

20.    As a result of its widespread and meticulous promotional campaign and press coverage, and its emphasis on maintaining personal relationships with the thousands of NYC Triathlon participants and hopefuls, Plaintiff has generated an incalculable amount of goodwill within the triathlon community, with the press that covers the event and with the public generally.

21.    The race scheduled for 2010, the tenth consecutive NYC Triathlon, is more popular than ever. During the registration for the 2010 event, the NYC Triathlon's 5,600 entry spots sold out online in six minutes and 43 seconds after entries opened at 12:01 a.m. on November 1, 2009. Nearly 20,000 people tried to enter. Moreover, the NYC Triathlon now averages around 250,000 spectators.

22.    Likewise, the NYC Triathlon's media coverage, broadcast range, and advertising reach are at all-time highs. This year's race will be broadcast on three competing stations in the same market – New York's Fox TV affiliate, the New York/New Jersey station WWOR, and the cable television station SNY – and also will be covered by a national and international outlet to be determined.

23.     Since the 2010 NYC Triathlon is sold out, Plaintiff is planning to launch its advertising campaign for the 2011 race in the Spring of 2010.

24.     The NYC Triathlon is divided into several divisions, ranging from elite Olympic professionals to more casual participants to physically disabled athletes (including the world's largest field for USAT's ParaTriathlon National Championship). These multiple divisions ensure not only a large group of participants but also a wide spectrum of spectators (watching both live and on television). In order to stage such a geographically widespread and highly attended event, Plaintiff employs a full-time year-round staff of four, a full-time staff of eight during the busiest four months of the year, a staff of two hundred during the week of the race, and retains a team of 1,000 volunteers to ensure that the race is run smoothly. Additionally, Plaintiff hires a wide variety of independent contractors and their staffs, including a race director, an emergency service plan coordinator, a medical director, a harbor master, a sizeable team of psychiatrists, a coordinator for athletes with disabilities and prosthetics, a transition coordinator, and upon information and belief, the largest swim personnel safety staff for a triathlon of this size.

25.     For the past eight years, Plaintiff has organized the NYC Triathlon Club Championships ("NYC Tri Club Championships"), a competition within the NYC Triathlon, in which participants from various triathlon clubs compete to see which club finishes with the top five finishing times. From 2005 – 2008, the NYC Tri Club Championships were sponsored by SBR, an entity owned by Defendant's principal, Mr. Vandaele.

26.     In addition to the race itself, Plaintiff stages the "New York City Triathlon Exposition" ("Expo") for sponsors, entrants, and the general public. The Expo, which is one of the two largest in the country for an Olympic distance triathlon, is designed to promote and

publicize the NYC Triathlon and to serve as a spot for pre-race briefings to all entrants. The Expo also serves as a venue for the Triathlon's sponsors to interact with and sell merchandise or services to entrants and spectators. In 2009, an estimated 15,000 people visited the Expo.

27.     In addition to sponsors selling merchandise and services at the Expo, Plaintiff also maintained a display shop at which it sells exercise related gear and products, many of which, in 2009, bore the name and marks "NYC Triathlon," "NYC Tri," and "NYC Triathlon 2009" and also included the name of the principal sponsor Nautica. Plaintiff estimates it sold $100,000 worth of merchandise during the 2009 NYC Triathlon – which, upon information and belief, is more than any other Olympic distance triathlon sells of its own merchandise. These products were also sold on Plaintiff's website, www.nyctri.com. The website now sells similar merchandise relating to the 2010 NYC Triathlon.

28.     Plaintiff requires sponsors to submit all forms of merchandise for prior written approval before they may be disseminated or sold to the public at the Expo. Plaintiff further requires prior written approval for any merchandise sold by sponsors that bears the NYC Triathlon Marks.

29.     Plaintiff has entered into a sponsorship agreement with the Reebok Sports Club/NY ("Reebok") by which Reebok is named the official fitness center of the NYC Triathlon. Reebok's training club for the NYC Triathlon is featured prominently on the NYC Triathlon's website, at the URL: http://www.nyctri.com/Training/Reebok_Sports_Club__NY/2010_Reebok_Training_Programs.htm#. As part of this agreement, Reebok club members are given an opportunity to register for the NYC Triathlon before spots are opened to the general public. This is the only training club officially affiliated with the NYC Triathlon.

30.     Plaintiff grosses about $1.5 million in revenue from participant entry slot fees, which range from $245 to $500.  Upon information and belief, this figure is 50% greater than the nation's next-biggest Olympic distance triathlon and ten times greater than the average Olympic distance triathlon nationwide.  Additionally, the NYC Triathlon takes in about $800,000 in sponsorship fees, which, upon information and belief, is again two times bigger than the next biggest triathlon of this kind and twenty times greater than the average Olympic distance triathlon.

31.     About 1,000 NYC Triathlon participants compete on behalf of charities registered with the race, such as the American Cancer Society and the Leukemia & Lymphoma Society, raising about $2 million dollars annually for those charities.

32.     Plaintiff employs the public relations firm Rubenstein Communications, Inc. full-time to publicize the NYC Triathlon.  Moreover, Plaintiff requires all of the race's sponsors and affiliated charities to engage in their own public relations campaigns on behalf of the NYC Triathlon.

33.     The NYC Triathlon's immense popularity is due in no small part to Plaintiff's undivided attention to customer service, which ensures that the needs and desires of participants and spectators are met.  A few examples of the lengths of Plaintiff's preparation for the event are:

- carefully coordinating with various New York City government agencies responsible for granting permission to organize and hold the NYC Triathlon;

- laying out and safely organizing and operating the course over which the NYC Triathlon is held;

- installing top-notch facilities for participants and spectators, including launching and exiting facilities into and out of the Hudson River;

- creating a diverse race that includes elite professional triathletes, amateur participants, and physically disabled athletes;

- employing large numbers of paid and unpaid staffers; and

- providing infrastructure for a large and vibrant crowd, ensuring that the race is a memorable event for all who participate and attend.

34.    As a result of the extensive and continuous use of the NYC TRIATHLON Marks in connection with triathlon services, Plaintiff has developed substantial goodwill among consumers.  As direct examples of the goodwill it has built-up through the years, Plaintiff has received thousands of communications from participants and spectators commending the organizers on a job well done.  Examples of these communications include the following notes: "I'm extremely proud to be associated with such a world class event.  You and your team do a great job so keep it up!"; "I am extremely excited to participate in my third NYC Triathlon . . . The NYC Triathlon like the NYC Marathon has become one of the great events that is recognized World Wide.  You should be very proud of that!"; "I am looking forward to one of the most fun, best organized and supported races again next year,"; "I just wanted to thank you all for a tremendous event! I have done a few tri[athlon]s in different cities, and while I was excited to race in NYC, I was also a bit apprehensive. . . .  But to my astonishment, the event was extremely well organized, proceeded smoothly, and was easy to navigate. . . .  I came back to Baltimore and told everyone that they had to race in the NYC Tri, that it is so much fun.  Congratulations to you all, and thank you so much for putting on this event."; "You did it again! This year was even better than the years before... [sic] and I can say that with authority because

I've done the NYC tri every year since 2004. Thanks again for organizing such a phenomenal event."

35.    Through Plaintiff's exclusive use of the NYC TRIATHLON Marks, Plaintiff has established ownership of the NYC TRIATHLON Marks and the exclusive right to use those Marks in interstate commerce in connection with triathlon services.

36.    The NYC TRIATHLON Marks are inherently distinctive, and through their continuous and extensive use over the past ten years, the NYC TRIATHLON Marks have come to signify, identify and distinguish Plaintiff as the source of the well-known, high quality and respected NYC Triathlon. As such, the NYC TRIATHLON Marks have acquired distinctiveness and secondary meaning in the minds of consumers in New York, throughout the United States and worldwide.

37.    The NYC TRIATHLON Marks have become famous through their continuous and exclusive use worldwide, their widespread media coverage in print and television, television coverage of the event itself, and the undisputed success of the event.

38.    In recognition of Plaintiff's exclusive rights in the NYC TRIATHLON Marks and to further protect the name and trademarks of this signature event, Plaintiff has filed trademark applications with the United States Patent and Trademark Office for NEW YORK CITY TRIATHLON, NYC TRIATHLON and NYC TRI in International Class 41 for "athletic and sporting event services, namely arranging, organizing, staging and operating triathlon races" (respectively Serial Nos. 77/921,682, 77/921,689 and 77/921,700). These applications are currently pending.

## DEFENDANT ATTEMPTS TO TRADE ON
## THE NEW YORK CITY TRIATHLON'S NAME AND GOODWILL

39.     Upon information and belief, Defendant NYC Triathlon Club was incorporated November 19, 2009 by its principal shareholder, Christophe Vendaele ("Vandaele").  On information and belief, prior to forming the NYC Triathlon Club, Vandaele formed and operated the SBR Triathlon Club, Inc. ("SBR Tri Club") and SBR Multi Sports, Inc. ("SBR"), an online and physical triathlon store based in New York City, which he still owns and operates.

40.     Upon information and belief, the SBR Tri Club was affiliated with the SBR store and sponsored a series of triathlons in Harriman State Park, New York for several years.

41.     From 2005 to 2008, SBR was one of the NYC Triathlon's many sponsors, entering into an agreement with Plaintiff in which it would pay Plaintiff a fee for the right, *inter alia*, to call itself the "exclusive triathlon and bike retailer" of the NYC Triathlon. As such, SBR had a spot at the Expo where it was permitted to sell its own merchandise and other items in accordance with its sponsorship agreement.  The agreement did not permit SBR to sell any merchandise bearing the NYC TRIATHLON Marks.

42.     During the course of that relationship, SBR misused Plaintiff's brand by selling apparel bearing the NYC TRIATHLON Marks without Plaintiff's approval.  Plaintiff demanded that SBR immediately cease from selling the infringing merchandise.

43.     In 2009, SBR decided to limit its involvement with the NYC Triathlon, signing on only to take a booth at the Expo.

44.     SBR is no longer welcome to participate in the NYC Triathlon or Expo due both to its misuse of Plaintiff's brand and other incidents of poor customer service to race participants.

45.     Apparently no longer wishing to properly pay Plaintiff to affiliate itself with the NYC Triathlon, the SBR Tri Club decided to take the name for itself, renaming itself as the NYC Triathlon Club, effective January 1, 2010.

46.     The NYC Triathlon Club currently operates a website that can be accessed at the URL www.nyctriclub.com.  A person entering this address will be redirected to the NYC Triathlon Club's homepage, which may also be found at http://membermanager.net/nyctriclub.

47.     Upon information and belief, the website www.nyctriclub.com was registered on March 7, 2009 in the name Vandaele Holdings, a company believed to be affiliated with Plaintiff's principal, Christopher Vandaele.  Mr. Vandaele is listed as the registrant's administrative contact.

48.     The NYC Triathlon Club's website states that "[t]he New York City Triathlon Club is a club for athletes who aim to train for and compete in triathlons."  The site's "Frequently Asked Questions" section further states that it "is a club that encompasses New York City's iconic training grounds and distinctive energy."  The site also refers to the NYC Triathlon Club as "the namesake club of our city."

49.     The NYC Triathlon Club's website also has an online apparel shop, in which users can purchase running, cycling, and casual apparel, as well as hats and water bottles all prominently bearing the words, "NYC TRI CLUB."

50.     NYC Triathlon Club can also be found on Twitter!, LinkedIn and Facebook.

51.     Upon information and belief, the NYC Triathlon Club is seeking sponsors for its club who are of the same type of sponsors that sponsor Plaintiff and the NYC Triathlon and purchase space at Plantiff's Expo each year.

52.     Furthermore, upon information and belief, this is not the first time Mr. Vandaele has attempted to trade on another well-known established racing event.  In or around 2006, Vandaele made unauthorized use of the famous IRONMAN® trademark, announcing plans to organize a race called the "NYC Iron Race (a/k/a the Underground Ironman)." Following receipt of a cease and desist letter from the World Triathlon Corporation, the owner of IRONMAN® Mark and name, the event was cancelled.

53.     On or about December 23, 2009, Plaintiff first heard that the NYC Triathlon Club had been formed through an e-mail newsletter forwarded by another race organizer.

54.     Upon confirming that Defendant had begun to solicit members and sponsors, and after attempting (unsuccessfully) to discuss the matter informally with Mr. Vandaele, on or about January 6, 2010, Plaintiff sent the NYC Triathlon Club a cease and desist letter addressed to Vandaele's attention.  Attached hereto as Exhibit B is a true and correct copy of Plaintiff's cease and desist letter.  In this letter, Plaintiff warned Vandaele that NYC Triathlon Club had "already caused confusion among enthusiasts of the [Triathlon] and is likely to cause further confusion, mistake and deception to those familiar with our clients' Trademark . . . , as well as the media and possibly sponsors." The letter further noted that the NYC Triathlon Club's use of its name in its goods and services would cause confusion among consumers and weaken NYC Triathlon's ability to "clearly maintain their effective identity as the single source that

promotes and operates the [Triathlon]." As such, the letter requested that Vandaele or his counsel contact NYC Triathlon's counsel by January 15, 2010 to resolve the matter amicably.

55.     Neither Vandaele nor any representative of the NYC Triathlon Club responded to Plaintiff's letter.

56.     On January 25, 2010, the NYC Triathlon Club instead issued a press release, calling itself both "New York City Triathlon Club" and "NYC Tri Club" and announcing that, effective January 1, 2010, the SBR Tri Club had become the "New York City Triathlon Club." Mr. Vandaele is named as the President and leader of the club. The press release quotes Vandaele as follows, "[w]ithin just a few short years, we expect our membership to double and our reputation to stand as the leading triathlon organization in the New York City area." Attached hereto as Exhibit C is a true and correct copy of the NYC Triathlon Club's press release.

57.     Given the overlap of sponsors and the obvious sameness of consumers, *i.e.*, those that compete or consider competing in triathlons and other competitive races, Plaintiff and Defendant are operating in the same channels of trade.

58.     The NYC Triathlon Club's use of a name and mark nearly identical to Plaintiff's NYC TRIATHLON Marks in the same channels of trade is likely to cause confusion, mistake or deception among consumers, including race participants and sponsors, as to the source of services provided and whether they are affiliated with, sponsored by or otherwise related to Plaintiff and its services.

59.     The addition of the word "Club" to the NYC TRIATHLON Marks does little to differentiate Defendant's name from Plaintiff's protected trademarks and fails to dispel likely confusion among consumers between Plaintiff and Defendant and their services.

60.     There has already been actual confusion about the ownership and affiliation of the NYC Triathlon Club with the NYC Triathlon.  For instance, on or about December 23, 2009, the president of the Westchester Triathlon Club – who has run the Club for thirteen years – sent an e-mail to Korff, Plaintiff's principal, indicating that he "got an email about the [Defendant's] NYC tri club [sic].  It looks great."  Under the belief that Plaintiff owned and operated Defendant's NYC Triathlon Club, the sender requested that Korff add a particular triathlon to the NYC Triathlon Club's team schedule.

61.     Upon information and belief, NYC Triathlon Club has chosen to change its name to include Plaintiff's NYC TRIATHLON Marks with the willful intent to trade on the goodwill and reputation established by Plaintiff in the NYC TRIATHLON Marks over the past ten years.

62.     The NYC Triathlon Club, prior to its use of the NYC TRIATHLON Marks, had actual or constructive notice of those trade name and marks and of Plaintiff's exclusive rights to them.  Upon information and belief, the NYC Triathlon Club's conduct has been deliberate and has demonstrated willful, intentional, and callous disregard of Plaintiff's rights.

63.     The NYC Triathlon Club's actions have been, and unless enjoined will continue to be, in violation of federal and state law governing trademark infringement and unfair competition and are causing immediate and irreparable harm to NYC Triathlon, including blurring and tarnishing of its trademark, loss of control over its reputation, and loss of goodwill.

COUNT I

TRADEMARK INFRINGEMENT, UNFAIR COMPETITION,
AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

64.     Plaintiff repeats and realleges each of the allegations set forth in
paragraphs 1 through 62 above as though fully set forth herein.

65.     Defendant's use of the NYC TRIATHLON Marks, without the
authorization or consent of Plaintiff, in connection with its triathlon club and sale of triathlon
merchandise, constitutes a use in interstate commerce that is likely to cause confusion and
mistake and to deceive consumers as to the source or origin of the NYC Triathlon Club's
services such that consumers may believe that Defendant's club, services, merchandise, and/or
website are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or
connected with Plaintiff.

66.     By virtue of the foregoing, Defendant's acts are in violation of Section
43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67.     Plaintiff has exclusively used the NYC TRIATHLON Marks for ten years,
and has established ownership of the NYC TRIATHLON Marks and the exclusive right to use
those Marks in interstate commerce in connection with triathlon services.

68.     The NYC TRIATHLON Marks have acquired secondary meaning by
virtue of Plaintiff's advertising featuring the NYC TRIATHLON Marks, its sales success in
connection with the NYC TRIATHLON Marks, the large amount unsolicited media coverage of
the NYC Triathlon, Defendant's documented attempts to plagiarize the mark, and Plaintiff's
lengthy and exclusive use of the NYC TRIATHLON Marks.

69.     Upon information and belief, Defendant has intentionally and knowingly
adopted and used a name, mark, or false designation of origin likely to cause confusion in the

marketplace as to the source, origin, or sponsorship of the goods and services offered by Defendant.

70.     Defendant's acts are causing and continue to cause Plaintiff irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill.  The irreparable harm to NYC Triathlon will continue, without any adequate remedy at law, unless and until Defendant's unlawful conduct is enjoined by this Court.

COUNT II

FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(c)(1))

71.     Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 69 above as though fully set forth herein.

72.     The NYC TRIATHLON Marks are distinctive and by virtue of their extensive advertising and promotion have acquired secondary meaning in the marketplace. Through Plaintiff's exclusive world-wide use in print and broadcast media, and online, the NYC TRIATHLON Marks have earned a high degree of recognition by consumers and have become famous and highly distinctive of Plaintiff and its NYC Triathlon and affiliated goods and services.  The NYC TRIATHLON Marks are uniquely associated with Plaintiff.

73.     Defendant's use of "New York City Triathlon Club" and "NYC Tri Club" in its triathlon club operations, which began after the NYC TRIATHLON Marks acquired fame, is likely to dilute and has diluted, and unless restrained will continue to dilute, the distinctive quality of Plaintiff's famous marks by destroying and blurring the exclusive association between the NYC TRIATHLON Marks and Plaintiff's triathlon services, or otherwise lessening the capacity of the NYC TRIATHLON Marks to exclusively identify Plaintiff and its services.

74.     Defendant's use of the name NYC Tri Club and NYC Triathlon Club in connection with triathlon services, and the inferior customer service with which Defendant has

operated its businesses in the past, is also likely to dilute Plaintiff's NYC TRIATHLON Marks by tarnishing Plaintiff's reputation.

75.     Upon information and belief, Defendant willfully intended to trade on the recognition of Plaintiff's famous marks and willfully intended to harm Plaintiff's reputation.

76.     Defendant's acts are causing and continue to cause Plaintiff irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill.  This irreparable harm to Plaintiff will continue, without any adequate remedy at law, unless and until Defendant's unlawful conduct is enjoined by this Court.

COUNT III

CYBERSQUATTING (15 U.S.C. § 1125(d))

77.     Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 75 above as though fully set forth herein.

78.     Defendant, through Mr. Vandaele and a company identified as Vandeale Holdings, registered and is now using the domain name www.nyctriclub.com to market its triathlon services and its triathlon merchandise.

79.     Defendant's domain name expressly contains Plaintiff's trademark NYC TRI and is therefore identical and confusingly similar to Plaintiff's NYC TRIATHLON Marks.

80.     Plaintiff's NYC TRIATHLON Marks are distinctive, and had achieved secondary meaning and become famous by the time Defendant registered its domain name in March of 2009.

81.     The use of such a domain name infringes Plaintiff's rights in its NYC TRI mark.

82.     Upon information and belief (apart from its sponsorship of Plaintiff), neither Defendant nor Vandaele Holdings had used the names NYC Triathlon Club, NYC Tri

Club, or any similar name in connection with the offering of goods or services prior to registering the domain name, www.nyctriclub.com.

83.   Defendant and/or its affiliated and predecessor entities, having consistently sponsored the NYC Triathlon, had long been familiar with the NYC Triathlon and its website, www.nyctri.com, when it registered the domain name, www.nyctriclub.com.

84.   Upon information and belief, Defendant registered its domain name with the bad faith intent to profit from the goodwill Plaintiff has developed in the NYC TRIATHLON Marks.

85.   Upon information and belief, Defendant registered and is using a domain name which is confusingly similar to Plaintiff's name and marks to divert consumers from Plaintiff's web site to Defendant's site.

86.   Defendant's attempt to divert Plaintiff's users to a competitive site, for commercial gain and with the intent to tarnish or disparage Plaintiff's NYC TRIATHLON Marks by creating likely and actual confusion as to the source, sponsorship, affiliation or endorsement of Defendant's site, has harmed Plaintiff's goodwill in the NYC TRIATHLON Marks.

87.   Defendant's conduct has caused and will continue to cause injury to NYC Triathlon and to its goodwill and reputation, and will continue to both damage NYC Triathlon and the public unless enjoined by this Court and the domain name registration ordered transferred to Plaintiff.

COUNT IV

NEW YORK COMMON LAW TRADEMARK INFRINGEMENT

88.   Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 86 above as though fully set forth herein.

89.     Plaintiff has been using the NYC TRIATHLON Marks since 2001 both in New York state and internationally to identify and signify it as the source of the NYC Triathlon.

90.     Through extensive and continuous use, media coverage and publicity, the NYC TRIATHLON Marks have become well-known in New York and beyond and the race has earned tremendous goodwill among New Yorkers and among individuals located around the world.

91.     Defendant's use of the NYC TRIATHLON Marks, without the authorization or consent of Plaintiff, in connection with of its triathlon club and the sale of triathlon merchandise, constitutes a use in commerce that is likely to cause confusion and mistake and to deceive consumers as to the source or origin of the NYC Triathlon Club's services such that consumers may believe that Defendant's club, services, merchandise, and/or website are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with Plaintiff.

92.     By virtue of the foregoing, Defendant has infringed and continues to infringe upon the NYC TRIATHLON Marks.

93.     Upon information and belief, Defendant has intentionally and knowingly adopted and used a name, mark, or false designation of origin likely to cause confusion in the marketplace as to the source, origin, or sponsorship of the goods and services offered by Defendant.

94.     Defendant's acts are causing and continue to cause Plaintiff irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. The irreparable harm to NYC Triathlon will continue, without any adequate remedy at law, unless and until Defendant's unlawful conduct is enjoined by this Court.

COUNT V

VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 360-l

95.    Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 93 above as though fully set forth herein.

96.    Defendant's use of "New York City Triathlon Club," "NYC Tri Club," and www.nyctriclub.com, despite Plaintiff's exclusive use and rights in the distinctive NYC TRIATHLON Marks and the www.nyctri.com domain name have injured and will continue to injure Plaintiff's business reputation and have diluted and tarnished and will continue to dilute the distinctive quality of Plaintiff's strong and distinctive marks by blurring the identity between the Plaintiff's marks and its services or otherwise lessening the capacity of Plaintiff's marks to exclusively identify Plaintiff and its services and/or by tarnishing the positive associations represented by Plaintiff's marks.

97.    Defendant's actions are in violation of New York General Business Law section 360-l and are causing and continue to cause NYC Triathlon irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. This irreparable harm to NYC Triathlon will continue, without any adequate remedy at law, unless and until Defendant's unlawful conduct is enjoined by this Court.

COUNT VI

DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK
GENERAL BUSINESS LAW § 349

98.    Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 96 above as though fully set forth herein.

99.    Defendant's use of Plaintiff's name and the NYC TRIATHLON Marks constitutes an unlawful and deceptive act and practice in connection with the advertising,

promotion, marketing, distribution, and sale of goods and services in New York.

100.    Defendant's acts, misbranding its services and misleading consumers, have resulted in and will continue to cause confusion and deception of the public in violation of N.Y.G.B.L. § 349, *et seq.*

101.    Defendant's wrongful conduct has caused and will continue to cause irreparable harm and injury to Plaintiff.  This irreparable harm will continue, with any adequate remedy at law, unless and until Defendant's unlawful conduct is enjoined by this Court.

102.    Defendant's deceptive trade practices are willful, intentional, and egregious, justifying statutory and treble damages in an amount to be determined at trial, as well as an award of attorneys' fees under N.Y.G.B.L. § 349(h).

COUNT VII

COMMON LAW UNFAIR COMPETITION

103.    Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 102 above as though fully set forth herein.

104.    Defendant's use of "New York City Triathlon Club," "NYC Tri Club," and www.nyctriclub.com as a trade name, domain name and trademark, without the authorization or consent of Plaintiff in connection with its triathlon club operations and merchandising of goods and services is likely to cause confusion and mistake and to deceive consumers as to the source, origin, sponsorship or affiliation of Defendant's services and constitutes trade name and trademark infringement, unfair competition and misappropriation of Plaintiff's goodwill and reputation in violation of the laws of the State of New York.

105.    Upon information and belief, Defendant has adopted and used "New York City Triathlon Club," "NYC Tri Club," and www.nyctriclub.com as a trade name, domain name,

and trademarks in bad faith with the intent to trade off of Plaintiff's goodwill.  Defendant

adopted this name with full knowledge of Plaintiff's ten years of exclusive use, having been

affiliated with and sponsored Plaintiff in the past.  Despite this knowledge and fact that

Defendant could continue to operate its club under the SBR Tri Club, it decided instead to

misappropriate Plaintiff's name and use it as its own.

      106.    Defendant's acts are causing and continue to cause Plaintiff irreparable

harm in the nature of loss of control over its reputation, and loss of substantial consumer

goodwill.  This irreparable harm to Plaintiff will continue, without any adequate remedy at law,

unless and until Defendant's unlawful conduct is enjoined by this Court.

      WHEREFORE, Plaintiff NYC Triathlon demands judgment against

Defendant, as follows:

      A.  That Defendant, its officers, directors, agents, servants, employees and

attorneys and any and all persons in active concert or participation with Defendant who receives

actual notice hereof by personal service or otherwise, be preliminarily and permanently

restrained and enjoined from:

      1.    Imitating, copying or making unauthorized use of the

Plaintiff's trademarks, trade name or domain name either standing alone or as part of any other

name or mark;

      2.    Using "New York Triathlon," "NYC Triathlon," or "NYC

Tri" or any reproduction, counterfeit, copy, colorable imitation thereof, or any words confusingly

similar, as a trademark, trade name, domain name or otherwise in connection with the

advertising, display, sale, offering for sale or distribution of any services in any medium, including but not limited to the Internet and television, in such a manner that is likely to cause confusion or mistake or to deceive customers or the public or give the impression that Defendant or its products or services originate with, are affiliated with, are sponsored by, approved by or in any way connected to Plaintiff;

3.    Using as a name or mark "NYC Triathlon Club" or "NYC Tri Club" or any variation thereon;

4.    Using any name, mark or false designation of origin, or false description, or performing any act which can, or is likely to, lead members of the public to believe that any service or product provided by Defendant is in any manner associated or connected with Plaintiff or is sold, licensed, sponsored, approved or authorized by Plaintiff;

5.    Using "NYC Triathlon", "New York City Triathlon" or "NYC Tri" as a metatag or in any hidden data, including but not limited to, in conjunction with any internet searching tool;

6.    Using the name "nyctriclub.com", "nyctriclub.net" or "nyctriclub.org", or "nyctriclub" alone or in combination with any other words or letter, including "newyorkcitytriathlonclub" or "nyctriathlonclub" or with respect to any other top domain, as a domain name on the Internet;

7.    Engaging in any activity constituting unfair competition with NYC Triathlon, or constituting an infringement of NYC Triathlon's trademarks or trade

name; and

        8.     Registering or applying to register as a trademark, service mark, trade name, Internet domain name or any other source identifier or symbol of origin, "NYC Tri Club," "New York City Triathlon Club," or "NYC Triathlon Club" or any other mark or name that infringes on or is likely to be confused with Plaintiff's trademarks or trade name.

        B.  That Defendant be directed to file with this Court and serve upon Plaintiff within thirty (30) days after service upon Defendant of any injunction herein, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

        C.  That Defendant immediately cease the use of "nyctriclub.com" as a domain name and that that domain name be transferred immediately to Plaintiff.

        D.  That Defendant be required to account for all inventory of merchandise bearing words "NYC Tri" or "New York City Triathlon" or "NYC Triathlon" and that it be required to destroy that inventory or provide it to Plaintiff.

        E.  That Defendant and all others in active concert or participation with Defendant take affirmative steps to dispel any false impression or confusion that has been created by Defendant's use of "NYC Tri Club," "New York City Triathlon Club," or "NYC Triathlon Club" as a trade name, trademark and domain name.

        F.  That Defendant immediately destroy any and all advertising, promotion or marketing materials within their possession, custody or control that use the name or mark

"NYC Tri Club," "New York City Triathlon Club," or "NYC Triathlon Club"

G.  That Defendants account to Plaintiff for all Defendant's profits, gains and sums arising from the acts of infringement and unfair competition herein alleged.

H.  That, pursuant to 15 U.S.C. § 1117(a) and the laws of New York, Plaintiff be awarded attorneys' fees, Defendant's profits, and damages suffered by Plaintiff.

I.  That, pursuant to 15 U.S.C. § 1117(a), Plaintiff be awarded treble damages arising from Defendant's intentional and willful conduct.

J.  That, as provided for under the laws of New York, Plaintiff be awarded punitive damages arising from Defendant's intentional and willful conduct.

K.  That Plaintiff be granted such other and further relief as this Court may deem just and equitable.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues and claims properly triable thereby.

February 22, 2010

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: _____

　　　　　Peter A. Bicks
　　　　　Lisa T. Simpson
　　　　　Aaron G.R. Rubin

666 Fifth Avenue
New York, NY 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
pbicks@orrick.com
lsimpson@orrick.com
agrubin@orrick.com

Attorneys for Plaintiff
　　The New York City Triathlon, LLC

<u>VERIFICATION</u>

STATE OF NEW YORK          )
                                                       : ss.:
COUNTY OF NEW YORK   )

        John Korff, being duly sworn, hereby deposes and says that he is the

President of Korff Enterprises, Inc., the sole member of The New York City Triathlon,

LLC, the Plaintiff in the within action, that he is duly authorized to make this Verification

on behalf of said Plaintiff, that he has read and is familiar with the contents of the

Verified Complaint in this action and that the allegations thereof are true to the best of his

knowledge, information and belief.

                                                    John Korff

Sworn to before me this
_22_ day of February, 2010

Notary Public

TERI JEAN O'HALLORAN
Notary Public, State of New York
No. 01OH6145159
Qualified in Richmond County
Commission Expires May 1, 20_10_