UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE NEW YORK CITY TRIATHLON, LLC,

    Plaintiff,

-against-

NYC TRIATHLON CLUB, INC.,

    Defendant.

10 Civ. 1464 (CM)

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE PRELIMINARY INJUNCTION ORDER

Peter A. Bicks
Lisa T. Simpson
Aaron G.R. Rubin
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

Attorneys for Plaintiff
The New York City Triathlon, LLC

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................ 1

FACTS ........................................................................................................................................ 1

ARGUMENT .............................................................................................................................. 3

I.  Defendant's Rearranging of its Name Is
    Insufficient to Comply with the Court's Order ................................................................ 3

    A.  The Standard by Which an Enjoined Defendant
        Is Judged Is High and Is Not Satisfied Here .......................................................... 4

    B.  Defendant's Rearranged Name Violates
        the Court's Order and Should Be Enjoined ............................................................ 6

II. Defendant's Continued Use of the "NYC Tri Club" Name
    on it Social Networking Sites is a Clear Violation of the Order ...................................... 8

CONCLUSION ............................................................................................................................ 8

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

Eskay Drugs, Inc. v. Smith, Kline & French Labs.,
    188 F.2d 430 (5th Cir. 1951) .................................................................................................7

Howard Johnson Co. v. Khimani,
    892 F.2d 1512 (11th Cir. 1990) ..............................................................................................7

Oral-B Laboratories, Inc. v. Mi-Lor Corp.,
    810 F.2d 20 (2d Cir. 1987)..................................................................................................4, 5

PRL USA Holdings, Inc. v. United States Polo Ass'n, Inc.,
    520 F.3d 109 (2d Cir. 2008)....................................................................................................5

Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,
    317 F.3d 209 (2d Cir. 2003)....................................................................................................5

Serv. Ideas, Inc. v. Traex Corp.,
    846 F.2d 1118 (7th Cir. 1988) ................................................................................................5

Sunbeam Prods., Inc. v. West Bend Co.,
    123 F.3d 246 (5th Cir. 1997) ..................................................................................................5

SuperShuttle Int'l Inc. v. Schafer-Schonewill & Assocs. Inc.,
    39 U.S.P.Q. 2d 1766 (D. Colo. 1995) .................................................................................6, 7

Wella Corp. v. Wella Graphics, Inc.,
    37 F.3d 46 (2d Cir. 1994).......................................................................................................4

Wella Corp. v. Wella Graphics, Inc.,
    874 F. Supp. 54 (E.D.N.Y. 1994) ...........................................................................................6

## TREATISES

5 McCarthy on Trademarks and Unfair Competition, (4th ed. 2010) ...............................................3

## INTRODUCTION

Plaintiff The New York City Triathlon, LLC ("New York City Triathlon" or "Plaintiff") respectfully submits this memorandum of law in support of its motion to enforce the Court's Decision and Order Granting Plaintiff's Motion for a Preliminary Injunction entered on March 9, 2010, (the "Order") which enjoined Defendant from using "New York City Triathlon Club," "NYC Triathlon Club," or "NYC Tri Club" as names, trade names, or trademarks, or as a domain name on the Internet, or in any other way that is likely to cause confusion with Plaintiff's distinctive and well-known trade name and trademarks, NEW YORK CITY TRIATHLON, NYC TRIATHLON, and NYC TRI (the "NYC TRIATHLON Marks").

Despite the Court's Order, Defendant continues to use the prohibited "NYC Tri Club" name in connection with its social media sites and has made only minimal changes to its name on its main web page, rearranging its name from "NYC Triathlon Club" to "Triathlon Club NYC," in a clear effort to test the limits of this Court's Order. As set forth below, such conduct is inappropriate, and Defendant's de minimis changes are insufficient to put them in compliance with the Court's Order. As Defendant's lack of compliance continues to put Plaintiff at risk for continued loss of goodwill, Plaintiff brings this motion seeking the Court's assistance in enforcing the Order and requiring that Defendant cease its continued infringing behavior.

## FACTS

This Court's Decision and Order Granting Plaintiff's Motion for a Preliminary Injunction was entered on March 9, 2010. The Order clearly prohibited Plaintiff from using the "NYC Triathlon Club" name and domain name in any way likely to cause confusion with Plaintiff's NYC TRIATHLON Marks, and further enjoined Defendant's "ongoing trademark and trade name infringement, dilution, cybersquatting, unfair competition, and deceptive trade practices." Order at 1, 29. At the hearing on the motion, the Court indicated that its Order was

effective immediately and that Defendant must select a different name. *See* Declaration of Lisa T. Simpson, dated March 15, 2010 ("Simpson Decl."), Ex B at pp. 7-8.

On Wednesday, March 10, 2010, counsel for Plaintiff observed that Defendant's web site, located at www.nyctriclub.com, was still functional, and that Defendant was still operating under the name "NYC Triathlon Club" and similar derivations thereof. *See* Simpson Decl. ¶ 4. Plaintiff's counsel sent a letter to Defendant's representatives, seeking confirmation that Defendant was taking reasonable steps to comply with the Order. *See* Simpson Decl., Ex. C. In response, Lidia Rekas, one of Defendant's representatives, sent Plaintiff's counsel an e-mail indicating that Defendant "would change the website sometime today when we have the time to do it." *See* Simpson Decl., Ex. D. Ms. Rekas provided no indication that Defendant was taking any steps at that time to comply with the Court's Order and provided no indication of when Defendant expected that the transition to a new name would be complete across all mediums. That evening, Ms. Rekas e-mailed, stating that Defendant had "complied with the judge's order." *See* Simpson Decl. ¶ 5, Ex. D.

That representation was not true. Upon checking online, Plaintiff discovered that Defendant was still using the url www.nyctriclub.com. Simpson Decl. ¶ 6. Moreover, rather than adopting a non-infringing name that complied with the Court's Order, Defendant simply rearranged the words that the Court had enjoined it from using, calling itself "Triathlon Club NYC" and "Tri Club NYC." *Id.* By the morning of March 11, it appeared that Defendant had re-routed its website from www.nyctriclub.com to the url www.triathlonclubnyc.com. *See* Simpson Decl., ¶ 7 and Exhibit E.

At this time, Defendant is still using "NYC Tri Club" and the prohibited domain, nyctriclub.com, on its Twitter and LinkedIn pages, and may still be doing so on its private

Facebook page. *See* Simpson Decl. ¶¶ 8, 12 and Exhibit I. It also continues to use the rearranged name "Triathlon Club NYC." *See* Simpson Decl. ¶ 13. By letter to the Court, dated March 12, 2010, Defendant's counsel indicated its position that, despite these facts, "Defendant has fully complied with the Court's order." *See* Simpson Decl. ¶ 10 and Exhibit G. Although Plaintiff has tried to resolve these issues without the involvement of the Court, Defendant and now its counsel have indicated that Defendant is not willing to change its position. Since Defendant, through these acts, has rendered the preliminary injunction ineffective, Plaintiff is forced to seek the Court's assistance to protect its name and goodwill.

## ARGUMENT

### I. Defendant's Rearranging of its Name Is Insufficient to Comply with the Court's Order

As recognized in McCarthy on Trademarks, the oft-cited and respected treatise on trademark law, "[i]n a surprisingly large number of cases, a defendant enjoined from use of an infringing trademark has proceeded to make only a minute and de minimis change in purported compliance with the court's order." 5 McCarthy on Trademarks and Unfair Competition, § 30.21 (4th ed. 2010). In such cases, courts generally require that such a "devious defendant" be ordered to keep a "safe distance" from the line established by the court and not "see how close [it] can come with safety to that which [it was] enjoined from doing." *Id.* Defendant's actions here place it squarely in the company of those other "devious defendants." As noted above, rather than choosing a name that is sufficiently different from Plaintiff's NYC TRIATHLON Marks, Defendant instead has chosen to change as little as possible, merely rearranging the words at issue, and arguing that its new name is sufficiently different. It is not.

### A. The Standard by Which an Enjoined Defendant Is Judged Is High and Is Not Satisfied Here

As an initial matter, the Second Circuit has held that when a court is charged with considering an enjoined defendant's use of a revised mark and whether that new mark violates the court's order, the court's scope of review is limited: "When enforcing injunctions . . . courts . . .should simply evaluate whether or not the new mark is confusingly similar to the protected mark. . . . The injunction . . .would be of questionable value if enforcement against every alteration of the infringing mark required a relitigation of the *Polaroid* factors." *Wella Corp. v. Wella Graphics, Inc.*, 37 F.3d 46, 48 (2d Cir. 1994) (holding that the district court erred by considering the *Polaroid* facts on a motion for enforcement of a preliminary injunction). Thus, the Court need not start anew and evaluate Defendant's revised name as though it were the initial accused mark. Rather, the Court must ask only whether Defendant's revised mark is confusingly similar to Plaintiff's marks.[1]

The standard applicable to that inquiry, however, is not the same as would be applied to a good faith innocent user who had not yet been enjoined. Rather, a defendant that has been enjoined bears a heavier burden to find a new mark that is sufficiently distant from the plaintiff's mark; this is referred to as the "safe distance" rule. As stated by the Second Circuit in *Oral-B Laboratories, Inc. v. Mi-Lor Corp.*, "[t]he court having found, at least as a preliminary matter, that Mi-Lor had infringed . . . it was Mi-Lor's duty to keep a safe distance from the line drawn by the district court's injunction. . . . a party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party." 810 F.2d 20, 24

---

[1] While Defendant has indicated that, in a separate motion to vacate this Court's injunction, it may seek to argue that Plaintiff's marks are weak and/or dispute other of the Court's preliminary injunction findings, none of those issues are before the court on this motion. Indeed, the Court has already determined that "Plaintiff's NYC TRIATHLON Marks have most certainly obtained secondary meaning and can be considered strong marks." Order at 10. The only question here is whether Defendant, in deciding to rearrange its mark rather than picking an entirely new brand, has moved sufficiently away from Plaintiff's marks to comply with the injunction.

(2d Cir. 1987), *superseded on other grounds, Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 585 (2d Cir. 1993). In *Oral-B*, the Second Circuit affirmed the district court's conclusion that the "subtle distinctions" made by the defendant in changing the color and look of their trade dress was insufficient and crossed the line set by the district court. *Id.*; *see also Wella Corp.*, 37 F.3d at 48 (recognizing that this may "impose a heavier burden on an infringing party with a redesigned mark than is imposed on a newcomer with a similar mark"); *PRL USA Holdings, Inc. v. United States Polo Ass'n, Inc.*, 520 F.3d 109, 117 (2d Cir. 2008) (in determining whether an injunction has been violated, the safe distance rule relieves court of need to retry entire range of issues for each small variation that defendant makes).

"Accordingly, the 'safe distance' rule permits the court to issue injunctions that sweep even more broadly than the Lanham Act would permit against a manufacturer who has not already been found liable for trademark infringement." *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 260 (5th Cir. 1997); *see also Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 220 (2d Cir. 2003) ("[A] court can frame an injunction which will keep a proven infringer safely away from the perimeter of future infringement.") (citation and quotation omitted). In *Sunbeam*, the court affirmed the district court's modification of its preliminary injunction to include the defendant's new designs, noting that "[a] competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line – even if that requirement involves a handicap as compared with those who have not disqualified themselves." 123 F.3d at 260; *Serv. Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1124 (7th Cir. 1988) (previously enjoined defendant's design should not be accorded "the same leniency that a good faith user might ask for.").

Defendant's reordering of the words that it has been prohibited from using is not only confusingly similar to Plaintiff's name and mark, it also does not place Defendant a sufficient distance from Plaintiff's protected marks.

### B. Defendant's Rearranged Name Violates the Court's Order and Should Be Enjoined

Defendant, by simply rearranging its mark to move the first word to the last, changing "NYC Triathlon Club" to "Triathlon Club NYC," has engaged in exactly the type of game-playing criticized by courts that have considered similar behavior. Rather than stay a safe distance away from Plaintiff and its NYC TRIATHLON Marks, Defendant has elected to push the limits of the Court's Order, choosing another confusingly similar mark by which to brand its services. Defendant's revised name is unacceptable and a continued violation of the Court's Order.

On remand from the Second Circuit's decision in *Wella Corp*, discussed above, the District Court considered a similar change by the defendant in that case. There, the defendant changed its name from WELLA GRAPHICS to WELLO GRAPHICS. The court held:

> Not only must Wella Graphics comply with the terms of the injunction, it is duty bound to steer clear of the dividing line between compliance and violation. In other words, defendants may not test the boundaries of this court's order by making only minimal changes to a mark already found to be infringing. . . . Defendants' alteration of a single letter in its name . . . does not meet this heightened standard for compliance.

*Wella Corp. v. Wella Graphics, Inc.*, 874 F. Supp. 54, 56 (E.D.N.Y. 1994).

Similarly, in *SuperShuttle Int'l Inc. v. Schafer-Schonewill & Assocs. Inc.*, 39 U.S.P.Q.2d 1766, 1766-68 (D. Colo. 1995), the court rejected that defendant's efforts to rearrange its mark, just as Defendant does here. In that case, the plaintiff, SUPER SHUTTLE,

had obtained an injunction enjoining the defendant from using the mark SUPER SHUTTLE EXPRESS. *Id.* at 1766. The defendant purported to comply with the injunction by rearranging its name to SUPER EXPRESS SHUTTLE. *Id.* at 1767. The court held that the rearranged mark "was not a good faith attempt to comply with [the] Court's Preliminary Injunction" and found defendant to be in contempt. *Id.* ("Indeed, as infringers, the Defendants had and have an affirmative duty to and must stay a 'safe distance' away from the Plaintiff's SuperShuttle service mark"); *see also Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1517-18 (11th Cir. 1990) (affirming district court's finding that defendant's change of name from "Howard Johnson" to "H.J. Inns" was in contempt of preliminary injunction and noting that "the legal posture of this case places a heavier burden upon the defendants of avoiding a colorable imitation of or diluting [plaintiff's] marks than upon a party not already preliminarily enjoined from engaging in such activity."); *Eskay Drugs, Inc. v. Smith, Kline & French Labs.*, 188 F.2d 430, 432 (5th Cir. 1951) (defendants "are trying to come about as close as is conceivably possible to a continuance of the use of [plaintiff's mark], which they are prohibited from using . . . . If this court permitted such an act, it would render ineffective the consent decree entered into between these same parties. . .").

As in those cases, it is clear that Defendant has chosen a new name that is as close as possible to Plaintiff's name so that it can continue to trade on and benefit from Plaintiff's hard work and established goodwill. Defendant's rearranged name is not only confusingly similar to Plaintiff's name and marks, it falls woefully short of satisfying the requirement that Defendant choose a mark that is a safe distance from Plaintiff's. The Court's finding that Defendant appropriated Plaintiff's mark in bad faith (*see* Order at 15-16, 24-25) emphasizes the need for Defendant to maintain a "safe distance" from the NYC TRIATHLON Marks. Indeed,

7

Defendant's refusal to select a name and mark of its own, completely unrelated to Plaintiff's name and mark, merely reinforces that Defendant is and was looking to trade on Plaintiff's strong brand. Plaintiff therefore requests that the Court enforce the order, modifying it if necessary, to enjoin Defendant from using the name "Triathlon Club NYC" and any other name or mark confusingly similar to Plaintiff's NYC TRIATHLON Marks, as set forth in detail in Plaintiff's Order to Show Cause and below.

## II. Defendant's Continued Use of the "NYC Tri Club" Name on it Social Networking Sites is a Clear Violation of the Order

Defendant continues to use the phrases "NYC Tri Club" and "nyctriclub" in its Twitter and LinkedIn pages and urls and may be continuing to use the name and mark on its now-private Facebook and Twitter pages. *See* Simpson Decl., Ex. I. There can be no debate that this usage is prohibited by the Order. Plaintiff therefore requests that Defendant be directed to remove all references to "NYC Tri Club" (and "Tri Club NYC" as set forth above) on its social networking sites. And, since Plaintiff is not able to view all uses on those sites once they have been made private by Defendant, Plaintiff further requests that Defendant be required to provide assurances that it has fully complied with the Court's Order and removed all references to the prohibited names and marks from its social networking sites.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court issue an order enforcing the terms of its March 9, 2010 Order, or modifying it if necessary, as follows:

1. Defendant is enjoined from imitating, copying or making unauthorized use of Plaintiff's "New York City Triathlon," "NYC Triathlon," or "NYC Tri" (the "NYC TRIATHLON Marks") as a trademark, trade name or domain name, either standing alone or as part of any other name or mark;

2. Defendant is enjoined from using "NYC Triathlon Club," "New York City Triathlon Club," and "NYC Tri Club" or any variation thereon as a name, trademark or trade name, either standing alone or as a part of any other name or mark;

3. Defendant is enjoined from using any name or mark that is a colorable imitation of, a variation on, or is confusingly similar to Plaintiff's NYC TRIATHLON Marks;

4. Defendant is enjoined from using "Triathlon Club NYC" or "Tri Club NYC" or any variation thereon as a name, trademark or trade name, either standing alone or as part of any other name or mark;

5. Defendant is enjoined from using the domain name www.nyctriclub.com;

6. Defendant is enjoined from using the domain name www.triathlonclubnyc.com;

7. Defendant is enjoined from using "nyctriclub," "nyctriathlonclub," "triathlonclubnyc," or "triclubnyc," or any variations thereon, or any name or phrase that is confusingly similar to Plaintiff's NYC TRIATHLON Marks, as a domain name in connection with any top-level domain, such as .com, .org, .net, .biz, .info, etc. on the Internet;

8. Defendants is enjoined from using "NYC Tri Club" or any variation thereon and "Tri Club NYC" and any variation thereon, or any other name or mark confusingly similar to Plaintiff's NYC TRIATHLON Marks, on Facebook, Twitter, LinkedIn or any other social networking site, as a domain name or group identifier or otherwise, and to the extent that Defendant has made those pages private, Defendant must inform the Court that it has indeed complied with the terms of this Order and is not using the prohibited names and marks on those private sites;

9. Defendant is enjoined from using the NYC TRIATHLON Marks or any mark confusingly similar to the NYC TRIATHLON Marks, such as "Triathlon Club NYC," as a metatag or in any hidden data, including but not limited to, in conjunction with any Internet searching tool;

10. Defendant is enjoined from using the NYC TRIATHLON Marks or any marks confusingly similar in its electronic and print advertising, promotional, and marketing content, including in its communications with members;

11. Defendant is enjoined from using the NYC TRIATHLON Marks or any reproduction, counterfeit, copy, colorable imitation thereof, or any words confusingly similar, as a trademark, trade name, domain name or otherwise in connection with the advertising, display, sale, offering for sale or distribution of any goods or services in any medium, including, but not limited to, the Internet and television and mail, in such a manner that is likely to cause confusion or mistake or to deceive customers or the public or give the impression that

Defendant or its products or services originate with, are affiliated with, are sponsored by, approved by or in any way connected to Plaintiff; and

12. Defendant is enjoined from taking any other actions that infringe or dilute the value of Plaintiff's NYC TRIATHLON Marks.

DATED: New York, New York
March 18, 2010

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ Lisa T. Simpson
Peter A. Bicks
Lisa T. Simpson
Aaron G.R. Rubin

666 Fifth Avenue
New York, New York 10103
(212) 506-5000
pbicks@orrick.com
lsimpson@orrick.com
agrubin@orrick.com

Attorneys for Plaintiff
The New York City Triathlon, LLC